IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN NADING, AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF LAURA HANSEN,<br><br>Plaintiff,<br><br>vs.<br><br>THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, and SANFORD HEALTH NETWORK,<br><br>Defendants. | 8:26-CV-144<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

The matter is before the Court on the Motion to Compel Arbitration by defendant The Evangelical Lutheran Good Samaritan Society (Good Samaritan Society) and defendant Sanford Health Network (Sanford). Filing 10 at 1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds $75,000.00. For the reasons stated below, the Motion to Compel Arbitration is granted.

## I. INTRODUCTION

### A. Procedural Background

On January 27, 2026, plaintiff John Nading, as Special Administrator for the Estate of Laura Hansen, filed a Complaint and Demand for Jury Trial. Filing 1-2 at 1, 8. Good Samaritan Society was served with the Complaint on March 16, 2026, and Sanford was served with the Complaint on March 19, 2026. Filing 1-2 at 16; Filing 1-2 at 19; Filing 1 at 1. On April 6, 2026, Good Samaritan Society and Sanford jointly filed a Notice of Removal from the Nebraska District Court for Douglas County to the United States District Court for the District of Nebraska on diversity grounds. Filing 1 at 1-2, 5. Defendants also filed a joint Answer, Affirmative Defenses, and Jury Demand on April 6, 2026. Filing 2 at 1, 5.

1

On May 18, 2026, Defendants filed the Motion to Compel Arbitration now before the Court seeking arbitration pursuant to a written contract labeled the "Admission Agreement," signed by Nading in his capacity as the "Resident Representative" of Laura Hansen on November 9, 2023. Filing 10 at 2; Filing 10-1 at 15. Defendants ask this Court to "[c]ompel. . . . arbitration under the Federal Arbitration Act, pursuant to the Admission Agreement and Federal Arbitration Act," "[s]tay. . . . this proceeding during the pendency of the arbitration," and grant "[a]ny and all other relief the Court deems appropriate." Filing 10 at 5. Nading filed no response to the Motion to Compel Arbitration, and the time to do so has now expired.

### B.  Factual Background

On November 9, 2023, Laura Hansen was admitted to Good Samaritan Society, located in Millard, Douglas County, Nebraska, for skilled nursing treatment. Filing 1-2 at 2. When Hansen was admitted to Good Samaritan Society, Nading, Hansen's medical or health care power of attorney and financial power of attorney, signed the Admission Agreement, which contained a Resolution of Legal Disputes/Arbitration Agreement (Arbitration Agreement). Filing 10-1 at 14-15. Section A. of the Arbitration Agreement, which pertained to a resident's rights, stated:

> Any legal controversy, dispute, disagreement or claim arising between the Parties hereto after the execution of this Admission Agreement in which Resident, or a person acting on his or her behalf, alleges a violation of any right granted Resident under law or contract shall be settled exclusively by binding arbitration as set forth in Section C. below.

Filing 10-1 at 14. Section B. of the Arbitration Agreement, titled "All Other Disputes," stated:

> Any legal controversy, dispute, disagreement or claim of any kind arising out of or related to this Admission Agreement, or the breach thereof, or, related to the care of stay [sic] at the Facility, shall be settled exclusively by binding arbitration as set forth in Section C. below. This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims and all allegations of fraud concerning entering into or canceling this Admission Agreement. This arbitration provision binds all parties whose claims may arise out

2

of or relate to treatment or service provided by the center including any spouse or heirs of the Resident.

Filing 10-1 at 14. The Arbitration Agreement also included the relevant governing law under section D.:

> The Parties acknowledge that the Facility regularly conducts transactions involving interstate commerce and that the services provided by the Facility to the Resident involve interstate commerce. The Parties therefore agree that this Admission Agreement is a transaction involving interstate commerce. The Parties agree that this Resolution of Legal Disputes provision and all proceedings relating to the arbitration of any claim shall be governed by and interpreted under the Federal Arbitration Act (FAA), 9 U.S.C. Sections 1- (or as amended or superseded). The Parties agree that in the event they are unable to agree upon selection of a mutually agreeable individual arbitrator or nationally recognized arbitration service provider, Section 5 of the FAA shall control.

Filing 10-1 at 15.

Hansen resided in the facility from November 9, 2023, until February 11, 2024. Filing 1-2 at 2. Hansen was admitted to Good Samaritan Society because she "suffered from dementia with agitation, anxiety, depression, and other chronic medical conditions." Filing 1-2 at 3. Nading alleges, "The Facility recognized her cognitive impairments and initially developed therapy plans; however, all therapies were discontinued by December 21, 2023, despite ongoing functional and cognitive needs." Filing 1-2 at 3. In December of 2023 and January of 2024, Hansen's "medication regimen was changed: citalopram increased; mirtazapine increased; and amitriptyline discontinued." Filing 1-2 at 3. After the medication modifications, "Hansen exhibited increased confusion, diminished appetite, and progressive weight loss." Filing 1-2 at 3.

Hansen's condition deteriorated further in February of 2024. "On February 8-10, 2024, the Facility obtained laboratory studies: the February 9 urinalysis was abnormal; the February 10 urine culture grew greater than 100,000 cfu/mL Group B Streptococcus." Filing 1-2 at 3. Nading alleges that "[o]n information and belief, Defendants failed to timely notify Ms. Hansen's physician and Ms. Hansen's legal representative, and failed to implement timely antibiotic treatment, enhanced

3

monitoring, or care-plan updates." Filing 1-2 at 3. Additionally, Nading alleges that "[o]n February 10, nursing staff documented a need for 'close monitoring,' yet Defendants failed to implement or document adequate checks or supervision." Filing 1-2 at 3. "On February 11, 2024, at approximately 8:05 p.m., Ms. Hansen was found dead, hanging with a ligature, inside a closet within the Facility." Filing 1-2 at 4. Nading alleges that "[t]he last purported check on Ms. Hansen was at approximately 6:00 p.m., more than two hours before she was found deceased." Filing 1-2 at 4.

Nading was appointed Special Administrator of the Estate of Laura Hansen on April 4, 2025, by the Probate Division of the Douglas County Court. Filing 1-2 at 1. Nading argues that Defendants were negligent because they breached a duty to Hansen to "use ordinary and reasonable care." Filing 1-2 at 4. Nading claims wrongful death, contending that "Defendants' professional negligence was the direct and proximate cause of the wrongful death of Laura Hansen." Filing 1-2 at 6. Nading also asserted a survival action because "Laura Hansen had a cause of action against the Defendants during her lifetime for injuries, pain, disability, mental anguish, and fear of death." Filing 1-2 at 6-7. Nading demanded a jury trial for all causes of action. Filing 1-2 at 7.

## II. LEGAL ANALYSIS

### A. Standard of Review

"To decide the question of arbitrability, [courts] must determine whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." *JES Farms P'ship v. Indigo Ag Inc.*, 116 F.4th 733, 736 (8th Cir. 2024) (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018)). "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

4

Defendants are asking this Court to "[s]tay. . . . this proceeding during the pendency of the arbitration" Filing 10 at 5. The United States Supreme Court has held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

In this case, the arbitration agreement is properly governed by the Federal Arbitration Act (FAA), and section four of the FAA states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

### B.  Discussion

#### 1.    *The Arbitration Agreement Is Valid*

The Court begins its analysis with the question of "whether a valid arbitration agreement exists between the parties. . . ." *JES Farms P'ship*, 116 F.4th at 736. The Arbitration Agreement at issue here states that "[a]ny arbitration conducted pursuant to this Resolution of Legal Disputes shall be conducted within the county wherein this Facility is located or other convenient venue as agreed to the Parties." Filing 10-1 at 14. "'[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants.'" *Parm*, 898 F.3d at 873 (quoting *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009)). Because

the relevant facility is in Nebraska and the case has been brought in this Court, Nebraska law will govern.

Under Nebraska case law, formation of a contract requires mutual assent expressed through "an offer, acceptance, and consideration." *In re Estate of Ryan*, 925 N.W.2d 336, 341 (Neb. 2019). In this case, Nading signed the Arbitration Agreement on November 9, 2023, but his signature was "not a condition of admission or of continued stay or to receive care." Filing 10-1 at 14-15. Both parties acknowledged that "each has waived his/her or its rights to file a lawsuit in a court of law and waived the right to a trial before a judge and/or a jury." Filing 10-1 at 15 (reduced from all capitals). Therefore, Nading and Defendants received consideration by limiting the other party's ability to litigate, and Nading assented to the Arbitration Clause, evidenced by his choice not to mark the box right above his signature that was labeled, "NO I DO NOT wish to arbitrate disputes." Filing 10-1 at 15. Therefore, the Arbitration Agreement was properly formed through an offer, acceptance, and consideration. *Ryan*, 925 N.W.2d at 341 (explaining the requirements for formation of a contract).

2.      *The Disputes Fall within the Scope of the Arbitration Agreement*

Because there is a valid arbitration agreement, the Court must next determine "whether the subject matter of the dispute falls within the scope of the arbitration clause." *JES Farms P'ship*, 116 F.4th at 736. Courts must liberally construe valid arbitration agreements and "'resolv[e] any doubts in favor of arbitration. . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quotation omitted)). To determine if claims are within the scope of an arbitration clause, the Court must determine "whether the arbitration clause is broad or narrow." *Id.* (citing *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir.

6

1997)). "Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad." *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (quoting *Unison Co.*, 789 F.3d at 818). In applying a broad clause, courts ask whether "'the underlying factual allegations simply touch matters covered by the arbitration provision.'" *Unison Co.*, 789 F.3d at 818 (quoting *3M Co.*, 542 F.3d at 1199 (quotations and internal citation omitted)).

The Arbitration Agreement at issue here states, "Any legal controversy, dispute, disagreement or claim of any kind arising out of or related to this Admission Agreement, or the breach thereof, or, related to the care of stay [sic] at the Facility, shall be settled exclusively by binding arbitration as set forth in Section C. below." Filing 10-1 at 14. It further states, "This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims and all allegations of fraud concerning entering into or canceling this Admission Agreement." Filing 10-1 at 14. The Arbitration Agreement here is plainly "broad" as it expressly uses "arising out of" or "relating to" language. *See Zetor N. Am., Inc.,* 861 F.3d at 810 (looking at "arising out of" and "relating to" language as a sign of a broad arbitration agreement). To put it another way, the underlying factual allegations of the claim would not simply touch matters covered by the arbitration provision but would fall squarely within the arbitration provision as further shown by the list of claims to which the Arbitration Agreement applies. Filing 10-1 at 14; *Unison Co.*, 789 F.3d at 818. Plaintiff's claims are negligence and professional negligence, wrongful death, and a survival action, which are claims for negligence and tortious acts explicitly included in the Arbitration Agreement. Nading's claims are within the scope of the Arbitration Agreement. Therefore, Nading's claims must be resolved in arbitration.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Good Samaritan Society and Sanford's Motion to Compel Arbitration and their request for a stay in this proceeding during the pendency of the arbitration should be granted. Accordingly,

IT IS ORDERED that

1. Good Samaritan Society and Sanford's Motion to Compel Arbitration, Filing 10, is granted;

2. This matter is stayed pending arbitration.

Dated this 22nd day of June, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge